Workmen's Compensation Appeal Board of the Commonwealth of Pennsylvania and Carl A. Lindbom *v.* Jones & Laughlin Steel Corporation, Appellant.

470

Argued October 30, 1975, before President Judge BOWMAN and Judges ROGERS and BLATT, sitting as a panel of three.

*John C. Unkovic,* with him *Reed, Smith, Shaw & McClay,* for appellant.

*William R. Caroselli,* with him *McArdle, Henderson, Caroselli, Spagnolli & Beachler,* and *James N. Diefenderfer,* for appellees.

OPINION BY JUDGE BLATT, December 31, 1975:

Jones & Laughlin Steel Corporation (employer) appeals here from a decision of the Workmen's Compensation Appeal Board (Board) which affirmed a referee's order setting aside a final settlement receipt executed between the employer and Carl A. Lindbom (claimant). We affirm the Board.

The claimant sustained a fractured pelvis and a transected urethra while working at the employer's plant on February 7, 1970 as a brakeman, a job entailing heavy labor. As a result of this accident he received benefits from February 8, 1970 until March 16, 1971, but he signed a final settlement receipt on April 8, 1971 indicating that he had been able to return to work on March 17, 1971. On December 13, 1971, however, he filed a petition to set aside the final receipt, and a series of hearings was held before a referee who ruled on that petition on August 23, 1974, finding that the claimant's disability had continued after March 17, 1971 and reinstating benefits from that date. The Board affirmed without taking additional evidence.

A case such as this one, wherein the claimant seeks to set aside a final receipt, is governed by Section 434 of the Workmen's Compensation Act.[1] This section of the Act has been amended several times but the version in effect when the final receipt was executed, must control. *Bun v. Central Pennsylvania Quarry, Stripping & Construction Co.,* 194 Pa. Superior Ct. 630, 169 A.2d 804 (1961). The applicable version provided as follows:

"A final receipt, given by an employe or dependent entitled to compensation under a compensation agreement or award, shall be prima facie evidence of the termination of the employer's liability to pay compensation under such agreement or award: Provided, however, That the board, or a referee designated by

---

1. Act of June 2, 1915, P. L. 736, *as amended,* 77 P. S. §1001.

the board, may, at any time within two years from the date to which payments have been made, set aside a final receipt, upon petition filed with the board, if it be conclusively proved that all disability due to the accident in fact had not terminated."

In order to meet his burden under this section, the claimant must present clear and convincing evidence that his disability had not terminated. *Maciupa v. Union Switch & Signal,* 13 Pa. Commonwealth Ct. 126, 317 A.2d 901 (1974); *Rice v. A. Steiert & Sons, Inc.,* 8 Pa. Commonwealth Ct. 264, 301 A.2d 919 (1973). In attempting to satisfy that burden, the claimant here presented the testimony of Dr. Gerald W. Pifer, an orthopedist acquainted with the claimant's medical history. Dr. Pifer stated that he had examined the claimant on two occasions, April 14, 1973 and on July 5, 1973, and he related the claimant's injuries as having consisted principally of a fractured pelvis and a transected urethra. He expressed the opinion that the claimant was unable to return to his job because of the pain which he had had since the accident and which he was still experiencing. The claimant also testified on his own behalf and described his continuing pain. He stated that he could not do any kneeling or heavy lifting and that he could not walk for long distances or sit for any long period of time. He also recounted that when he attempted to return to work on one day in March or April of 1972, he felt such soreness that he could not continue. We believe that such testimony, if believed by the referee, was sufficient to sustain the claimant's burden.

The employer argues, of course, that its medical evidence was much more convincing than the claimant's in that it consisted of the testimony of three examining doctors, including an urologist, an orthopedist and a psychiatrist. The employer also points out that, by the claimant's own admission, two other physicians who examined him felt that he could return to work and was thus not totally

disabled. It is, however, within the referee's fact finding power to determine which evidence he chooses to believe and this power includes the resolution of conflicts in the medical testimony. *Westinghouse Electric Corporation v. Workmen's Compensation Appeal Board,* 17 Pa. Commonwealth Ct. 152, 331 A.2d 221 (1975). His finding of continued disability here is supported by substantial evidence, the testimony of Dr. Pifer and the claimant himself. In *Maciupa, supra,* the claimant's testimony alone was held to be sufficient to enable him to sustain his burden and to support a decision to set aside a final receipt.

The employer also argues that the referee erred in permitting Dr. Pifer to discuss the urological and, to a lesser extent, the psychological effect of the claimant's injury because Dr. Pifer was not a specialist in those areas. The question of whether or not the expert witness' knowledge or experience justifies admitting his opinion is a matter largely within the discretion of the judge at a jury trial. *Ragan v. Steen,* 229 Pa. Superior Ct. 515, 331 A.2d 724 (1974); *DeMarco v. Frommyer Brick Company,* 203 Pa. Superior Ct. 486, 201 A.2d 234 (1964). In a workmen's compensation case, the referee assumes the same discretionary authority, and a witness may be qualified as an expert if he "has any reasonable pretension to specialized knowledge on the subject under investigation." *Moodie v. Westinghouse Electric Corporation,* 367 Pa. 493, 501, 80 A.2d 734, 738 (1951). In *Ragan, supra,* a surgeon who was not a radiologist and who was admittedly unfamiliar with the practice of removing plantar warts by x-ray treatment, was permitted to testify concerning the effects of an overdose of radiation administered to a person undergoing such treatment. The Superior Court held there that no abuse of discretion by the trial judge occurred, for the witness had had many occasions to refer his own patients for x-ray treatment, was knowledgeable as to the risks of such treatment and had had occasion to observe the results of massive

doses of radiation. In the case at hand, Dr. Pifer testified that a fractured pelvis frequently causes other injuries, including urological ones, so that there is an interrelationship between the orthopedic and urological symptoms. Although he admitted that he did not treat urological problems per se, he stated that if he could correct an orthopedic problem, sometimes the cause of the urological problem would also be thereby removed. Moreover, Dr. Pifer's medical education encompassed the areas of urology and psychiatry, even if he did not subsequently choose either of these fields for his specialty. We believe that Dr. Pifer exhibited sufficient familiarity with the claimant's difficulties that the referee was justified in exercising his discretion in favor of allowing the doctor's opinion into evidence.

We, therefore, issue the following

### ORDER

AND, NOW, this 31st day of December, 1975, the order of the Workmen's Compensation Appeal Board setting aside the final receipt and reinstating benefits for total disability to Carl A. Lindbom is hereby affirmed.